**SO ORDERED.**

**SIGNED this 5th day of June, 2020.**



Dale L. Somers
United States Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

Eric Ray Henry,

           Debtor.

Case No. 19-40852-13

**Memorandum Opinion and Order
Granting in Part Debtor's Motion for Summary Judgment
and Denying in Part Chapter 13 Trustee's
Objection to Confirmation and Motion to Dismiss**

Debtor Eric Ray Henry proposes a Chapter 13 repayment plan that would pay a secured claim of approximately $63,000 for a 2018 Dodge Ram worth significantly less than that (by at least $20,000). The Chapter 13 Trustee objects to confirmation of that plan and moves to dismiss Debtor's case, arguing that under 11 U.S.C. § 1325(b)(3)[1] retention of the 2018 Dodge

---

[1] Future statutory references are to title 11, the Bankruptcy Code, unless otherwise stated.

Ram is not reasonably necessary, and that Debtor's petition and plan were not filed in good faith under § 1325(a)(3) and (a)(7). Debtor filed a motion for summary judgment arguing that the plan complies with the provisions of Chapter 13 and can be confirmed as filed.

The Court bifurcated the consideration of these issues into two parts. In this Order, the Court addresses the "reasonably necessary to be expended" language of § 1325(b)(3). The Court concludes that the amount "reasonably necessary to be expended" is defined further by § 707(b)(2), in particular in this case, by subsection (b)(2)(A)(iii)(I), and does not permit the Trustee's subjective judgment about Debtor's secured debt payments. That does not mean, however, that Debtor does not still have the burden to show under § 1325(a)(3) and (a)(7) that his petition and plan were "proposed in good faith."

As a result, the Court grants in part and denies in part Debtor's motion for summary judgment,[2] and denies in part the Chapter 13 Trustee's objection to confirmation and motion to dismiss.[3] The Court sets for trial the remaining issue of the good faith of Debtor's petition and plan as required by subsections (a)(3) and (a)(7) of § 1325.

---

[2] Docs. 23, 24, and 33. The parties stipulated that the Court should construe these pleadings as Debtor's motion for summary judgment.
[3] Docs. 20, 21, 36, and 37.

## I. Findings of Fact

Debtor and his wife divorced in March 2019. The next month, on April 22, 2019, Debtor financed the purchase of the 2018 Dodge Ram at issue with Envista Credit Union ("Envista"). Debtor financed $63,466.81, with interest at 4.44% annually, a monthly payment of $939.93, and a term of seventy-eight months. The sales contract shows that the finance charge over the course of the loan is $9847.73, for a total to be paid of $73,314.54. Debtor's first payment was due June 6, 2019.

Debtor traded in his prior vehicle to support the purchase of the 2018 Dodge Ram, and the parties dispute whether there was negative equity added to the amount financed from the payoff of the previous vehicle. The sales contract shows a cash price of $59,472.08 (which included sales tax). Toward that $59,472.08, Debtor was given a $28,983.80 trade-in allowance, less a payoff of $43,143.53 made by the seller, for a net trade in of negative $14,159.73. Debtor paid cash of $3768 and received a $9300 rebate. To the $59,472.08 total, Debtor also added fees and warranties of $3994.73, yielding the total amount financed of $63,446.81.

Debtor filed his Chapter 13 bankruptcy petition on July 10, 2019. That petition listed three secured claims: his home, valued at $150,000, with a claim of $135,000; the 2018 Dodge Ram, valued at $37,000, with a claim of $63,440; and household goods from Nebraska Furniture Mart, valued at

3

$5000, with a claim of $2000. Debtor also listed a total of $35,384 in unsecured debt.[4] Debtor stated his net income as $4898.83 per month and monthly expenses of $4575, leaving a monthly net of $324.83. Those monthly expenses include a $1120 home mortgage payment and the $940 car payment. Debtor's only vehicle is the 2018 Dodge Ram.

Debtor's proposed plan indicates he is above median income, and Debtor's applicable commitment period is five years. Debtor proposes a $250 monthly plan payment for the first eighteen months of his plan, and then $300 per month until the end of his plan. These funds paid to the Chapter 13 Trustee will pay the filing fee, attorney fees, trustee fees, and then the remainder will be distributed to unsecured creditors. Debtor proposes that the secured debt on the 2018 Dodge Ram be treated as a "910 car loan," with Envista to be paid the total amount of the debt owed. Debtor will pay his home mortgage, the debt on the 2018 Dodge Ram, and the debt on the household goods directly to each creditor. Debtor was current on those secured debts on the date of filing. Envista filed a proof of claim in Debtor's case for $63,134.91, reflecting the balance due on Debtor's account as of the petition date.

---

[4] Filed claims indicate that the total is actually $36,511.84.

4

The Chapter 13 Trustee objected to confirmation of Debtor's proposed plan and moved to dismiss the petition, alleging the plan did not meet the requirements of § 1322 and was unconfirmable under § 1325 because the 2018 Dodge Ram was not reasonably necessary and decreased the pool of funds to be distributed to unsecured creditors.

Debtor then filed an amended Schedule B, changing the value of the 2018 Dodge Ram from $37,000 to $42,000, based on the Kelley Blue Book valuation guide for the vehicle, at private party sale value. Debtor also responded to the Chapter 13 Trustee's objection to confirmation and motion to dismiss, and then filed a support brief.[5] Per the parties' agreed stipulation, the Court is treating these documents as Debtor's motion for summary judgment. The Chapter 13 Trustee also amended his objection to confirmation and motion to dismiss to specifically add a good faith challenge under § 1325(a)(3) and/or (a)(7).

On January 10, 2020,[6] the parties obtained an appraisal of the 2018 Dodge Ram for use in this dispute. Per that appraisal, as of the date of petition in July 2019, the vehicle's replacement value was $36,000; as of January 2020, the replacement value was $35,000. The appraisal also

---

[5] *See* Docs. 23, 24, and 33.
[6] The parties' stipulation mis-states the date of the appraisal as occurring in January 2019, rather than 2020. Based on the attachments to the appraisal and the general timing of this case, that date is incorrect.

5

indicated a trade in value for the 2018 Dodge Ram of $32,000, both on the petition date and in January 2020.

Additional alleged "facts" about Debtor's use of the 2018 Dodge Ram, the filed claims, and the impact on those claims if a new vehicle was purchased are alleged in Debtor's brief, but they are not supported by any record citations. Regardless, the Court finds they are not necessary to consideration of the legal issues herein.

## II. Conclusions of Law

Contested matters concerning "confirmation of plans" are core matters under 28 U.S.C. § 157(b)(2)(L) over which this Court may exercise subject matter jurisdiction.[7]

### A. Summary Judgment Standards and Burden of Proof

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] When analyzing a summary judgment motion, the Court draws all

---

[7] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[8] Rule 56 is incorporated and applied in bankruptcy courts under Federal Rule of Bankruptcy Procedure 7056.

6

reasonable inferences in favor of the non-moving party.[9] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[10] "Material facts" are those that are "essential to the proper disposition of [a] claim" under applicable law.[11]

The moving party bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact.[12] "When the moving party does not have the ultimate burden of persuasion at trial, . . . the moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the non-moving party does not have enough evidence to carry its burden of persuasion at trial."[13]

If the moving party meets its initial burden, the nonmoving party cannot prevail by relying solely on its pleadings.[14] "Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence

---

[9] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).
[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[11] *Id.*
[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[13] *Stonebarger v. Union Pacific R.R. Co.*, 76 F. Supp. 3d 1228, 1233 (D. Kan. 2015).
[14] *United States v. Dawes*, 344 F. Supp. 2d 715, 717–18 (D. Kan. 2004) (citing *Anderson*, 477 U.S. at 256).

7

supporting the allegation."[15] Under this Court's Local Bankruptcy Rules, "[t]he court will deem admitted . . . all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts."[16]

The burden of proof to obtain confirmation of a proposed Chapter 13 plan is on the plan proponent, by a preponderance of the evidence.[17]

### B. The "Reasonably Necessary" Standard of § 1325(b)(3).

The parties dispute boils down to whether an objecting Chapter 13 Trustee can force a debtor to surrender collateral to a secured creditor in order to free up room in that debtor's budget to pay more to unsecured creditors. Other than the amount established by the best interest of creditors test in § 1325(a)(4), there is no minimum level of payments to unsecured creditors required in Chapter 13 repayment plans.[18]

---

[15] *Id.*
[16] D. Kan. LBR 7056.1(a).
[17] *In re Styerwalt*, 610 B.R. 356, 368 (Bankr. D. Colo. 2019); *In re Toxvard*, 485 B.R. 423, 432 (Bankr. D. Colo. 2013); *In re Melvin*, 411 B.R. 715, 729 (Bankr. D. Kan. 2008) ("[W]hen a creditor objects to confirmation under § 1325(b), the debtor, as the proponent of a plan, has the ultimate burden of proof to show that a proposed plan satisfies the projected disposable income requirement for confirmation").
[18] *See* 8 *Collier on Bankruptcy* ¶ 1325.11 (Richard Levin & henry J. Sommer eds., 16th ed.) (hereinafter *Collier on Bankruptcy*) ("The ongoing dispute regarding whether there should be a minimum level of payments in chapter 13, other than that set by the section 1325(a)(4) best-interests-of-creditors test, was resolved by Congress in 1984 through the enactment of section 1325(b).").

8

Rather, the amount required to be paid in a Chapter 13 plan is governed by § 1325(b) of the Code. Specifically, § 1325(b)(1) states:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b)(1) "provides generally that, if the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, the plan may not be confirmed unless the debtor proposes to pay into the plan all of the debtor's "disposable income" for a specified period or until all allowed unsecured claims are paid in full, whichever is earlier."[19] This section was substantially amended to its current state by BAPCPA in 2005, specifically as a way to create a bright line test for contributions by a debtor to the plan, and to remove discretionary decisions on the topic that had been customary up to that point.[20] Debtor has not proposed a plan that pays his unsecured

---

[19] 8 *Collier on Bankruptcy* ¶ 1325.11.
[20] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 (2011) (stating that the "pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis . . . led to varying and often inconsistent determinations"); 8 *Collier on*

9

creditors in full, so the parties agree Debtor must pay all his "disposable income" to the plan.

Working through § 1325(b), subsection (b)(2) then defines "disposable income." Under § 1325(b)(2),

> the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended-- (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . ."

The statutory definitions then continue in subsection (b)(3). That subsection states that in cases where a debtor's current monthly income is above median, then the amounts "reasonably necessary to be expended" under § 1325(b)(2) "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[21] This language is important: in an above-median

---

*Bankruptcy* ¶ 1325.11 ("[S]ection 1325(b) was substantially amended by the 2005 amendments to the Bankruptcy Code. Instead of simply looking at the debtor's actual income and expenses, these amendments in many cases attempt to create a bright line test to determine whether a debtor's plan is committing all disposable income. By creating a bright line test, Congress even more clearly indicated that it intended section 1325(b), rather than the good faith test, to be the measure of whether the debtor was committing sufficient income to the plan.").

[21] 8 *Collier on Bankruptcy* ¶ 1325.11 ("Section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.").

The Supreme Court addressed § 1325(b) in *Ransom v. FIA Card Servs, N.A.* 562 U.S. 61 (2011). In *Ransom*, the Court was asked to decide whether a debtor could deduct a vehicle-ownership expense only if the debtor was actually making the loan payments on that vehicle. *Id.* at 68. The Supreme Court interpreted whether a deduction was appropriate for an "applicable monthly expense amount— the language used in the means test—when the expense was not actually applicable to that particular debtor. *Id.* at 69-70. The Court concluded that the phrase "the

income case—as is Debtor's case herein—disposable income is computed by subtracting from Debtor's current monthly income the "amounts reasonably necessary to be expended" for Debtor's maintenance, an amount that itself "shall be determined" by § 707(b)(2).[22]

Section 707(b)(2) is the "means test" formula, where "a debtor calculating his 'reasonably necessary' expenses is directed to claim allowances for defined living expenses, as well as for secured and priority debt."[23] Generally, debtors look to § 707(b)(2)(A)(ii)(I) to determine the amounts for a debtor's monthly expenses, and the Code's reference therein to the National and Local Standards promulgated by the IRS. Section 707(b)(2)(A)(ii)(I) states, however, that: "Notwithstanding any other provision

---

debtor's applicable monthly expense amounts" from the means test meant that only the expense amounts from the means test actually appropriate to the debtor's individual situation should be used. *Id.* at 70.

[22] *See, e.g., In re Warden*, No. 11-32340-svk, 2012 WL 1414277, at *2 (Bankr. E.D. Wis. Apr. 23, 2012) (stating that regarding suggestions "that the standards in § 707(b)(2)(A) merely are suggested guidelines for an above-median debtor's allowable expenses, this Court disagrees. For those debtors, Bankruptcy Code § 1325(b)(3) dictates that 'amounts reasonably necessary to be expended' for the debtor's maintenance and support '*shall* be determined' in accordance with § 707(b)(2).").

[23] *Ransom*, 562 U.S. at 65 ("In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. The statute defines 'disposable income' as 'current monthly income' less 'amounts reasonably necessary to be expended' for 'maintenance or support,' business expenditures, and certain charitable contributions. For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as 'amounts reasonably necessary to be expended.'" (internal citations omitted)).

11

of this clause, the monthly expenses of the debtor shall not include any payments for debts."[24] As a result, payments for secured debt are not included in the Standards.[25]

Payments on secured debts are instead governed by § 707(b)(2)(A)(iii), which states:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

---

[24] The bankruptcy court in *In re Lopez*, 574 B.R. 159, 178-80 (Bankr. E.D. Cal. 2017), has a good explanation for why the vehicle-ownership standard expense amount given by the IRS Standards in § 707(b)(2)(A)(ii)(I) is not a "cap" on the amount a debtor can deduct when computing his disposable income. *See also In re Law*, No. 07-40863, 2008 WL 1867971, at *12 (Bankr. D. Kan. Apr. 24, 2008) ("As an aside, the Court does not adopt the holding that the National and Local Standards operate as caps on the amount debtors can claim. This is especially true in the context of the automobile ownership expenses, because statutory language clearly and expressly allows debtors to claim a larger expense than the amount contained in the IRS standards. If the debt secured by a debtor's automobile, divided by the 60 month term of the plan, is greater than the amount specified in the IRS standards, the debtor is still allowed to take the greater amount.")
[25] *In re Welsh*, 465 B.R. 843, 849 (9th Cir. BAP 2012) ("Read together, § 707(b)(2)(A)(ii) and (iii) have been understood to allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, and also any payments on secured debt that will come due in the sixty months after the petition date.").

Section 707(b)(2)(A)(iii) addresses two types of payments on secured debt: the "normal, ongoing contractual payments due on a secured debt, contained in subsection (I), and those payments that are required to cure a default on contractual payments due on a debtor's 'primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents,' set out in subsection (II)."[26] The majority of courts addressing the issue have concluded that the restriction placed in subsection (II) that the property be "necessary for the support of the debtor and the debtor's dependents" is limited to only those payments *curing a default* on a secured debt; the computation required by subsection (I) for ongoing payments of secured debt is strictly mathematical.[27] As a result of the above statutory

---

[26] *In re Hays*, No. 07-41285, 2008 WL 1924233, at *4 (Bankr. D. Kan. Apr. 29, 2008).

[27] *See, e.g.*, *Baud v. Carroll*, 634 F.3d 327, 334 (6th Cir. 2011) ("The means test and the Official Form allow certain deductions on account of ongoing payments contractually due on secured debts and priority claims without regard to whether those payments are reasonably necessary."); *In re Welsh*, 465 B.R. 843, 849-50 (9th Cir. BAP 2012) ("We conclude that the means test of § 707(b)(2)(A), which is [] incorporated into chapter 13, allows a debtor to deduct from current monthly income payments on secured debts, averaged over sixty months as provided in § 707(b)(2)(A)(iii), regardless of whether the collateral is necessary."); *In re Roberts*, 493 B.R. 584, 589, 591 (Bankr. D. Kan. 2013) ("There is no language in [§ 707(b)(2)(A)(iii)] directing courts to question the reasonableness, or necessity, of any payments 'contractually due' on secured debt held by above-median debtors. . . . If Congress had intended to include any of the restrictive language from § 1325(b)(2) or § 707(b)(2)(A)(iii)(II) in subsection (I), it could have done so."); *In re Hays*, 2008 WL 1924233, at *4-5 (concluding that the Code's use of particular language in subsection (II) and not subsection (I) indicated that the particular language was intentionally used; also concluding that to read the statute otherwise would render a portion inoperative).

13

framework, the Court concludes that the amount reasonably necessary to be expended for Debtor's maintenance concerning Debtor's automobile payment is that amount computed by application of the formula in § 707(b)(2)(A)(iii)(I).

The Trustee argues that despite the above statutory framework, the Court must still assess whether Debtor's retention of the 2018 Dodge Ram is reasonable and necessary under § 1325(b)(3), and must also assess reasonableness as "necessary for the support of the debtor" under § 707(b)(2)(A)(iii)(II) because to hold otherwise would be contrary to the intent of the Code's desire for above median debtors to pay as much as possible to unsecured creditors. But the statutes are clear: the "necessary" language from subsection (II) is only applicable to "additional" payments to secured creditors, and in above-median Chapter 13 cases, the Code has removed discretionary decisions about reasonableness from ongoing contractual payments on secured debt.[28] Section 1325(b)(3) "permits debtors to deduct amounts allowed by the chapter 7 means test, even if they seem excessive to a trustee or creditor."[29] Sometimes this will yield odd results, such as here, where Debtor has a relatively high secured debt payment on an

---

[28] *See, e.g.*, *In re Roberts*, 493 B.R. at 591 ("[U]nder §§ 1325(b)(3) and 707(b)(2)(A)(iii), Debtors are allowed to deduct the full amount of their monthly mortgage payment from their projected disposable income, even if the result is that nothing is left for general unsecured creditors.").
[29] 8 *Collier on Bankruptcy* ¶ 1325.11.

14

automobile, "[b]ut this kind of oddity is the inevitable result of a standardized formula like the means test."[30] As the Supreme Court noted in *Ransom* when addressing another aspect of § 1325(b), "[s]uch formulas are by their nature over- and under-inclusive. In eliminating the pre–BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces."[31]

And frankly, the decision made by Debtor in this case is not particularly unusual. Debtor has chosen, through foolish whims or necessary evils, a high automobile payment. But perhaps Debtor has also chosen to spend less in other categories. Debtor's home ownership expense, including insurance, is $1170 per month. But Debtor budgets only $40 a month for entertainment, and zero for charitable contributions. Debtor spends almost as much on cigarettes per month ($180) as he budgets for childcare and child education costs ($215). The Court does not engage in a value-judgment about any of these expense estimates. Indeed, in a Chapter 7 case, the Court could decline to approve a reaffirmation agreement if it found that repayment of the loan would cause an undue hardship; the Court cannot do so in a Chapter

---

[30] *Ransom*, 562 U.S. at 70; *see also In re Lopez*, 574 B.R. 159, 171 (Bankr. E.D. Cal. 2017) ("Predictably, removing discretion in favor of a standardized schedule of allowed expenses may result in occasional anomaly.").
[31] *Ransom*, 562 U.S. at 70.

15

13 case under these facts. Rather, the means test calculation controls. A line by line budget analysis is exactly what BAPCPA's amendments to § 1325(b) for above median debtors were designed to avoid.[32]

The Trustee's proposal, that Debtor be required to trade in his vehicle in exchange for something with lower monthly payments in order to pay more to unsecured creditors, is also not an exercise the Court wishes to engage in. Debtor may be able to find an automobile with a lower monthly payment, but the interest rate would be significantly higher. And overall, would Debtor be saving himself or his creditors any money in the long run? Again, BAPCPA favors the payment of secured debt over payments to unsecured creditors. Yes, BAPCPA also wishes for above median debtors to pay as much as possible to unsecured creditors, but Debtor has complied with the statutory requirements for computing his disposable income under § 707(b)(2)(A)(iii) and his plan therefore complies with §1325(b)(3).

The Court concludes that to determine disposable income for above median debtors under § 1325(b)(2), debtors must look to the means test formula to compute "reasonably necessary" expenses as directed by

---

[32] *See* 8 *Collier on Bankruptcy* ¶ 1325.11 ("By setting an objective test for the debtor's total expenses, the section 707(b) formula permits a debtor the flexibility to spend more than the allowance in one category, such as rent, and less in another, such as transportation. Secured debt payments are deductible, no matter how high.").

§ 1325(b)(3), and must use the mathematical computation of § 707(b)(2)(A)(iii) to calculate ongoing secured debt payments. This is an objective exercise, without discretion. As a result, the Court grants Debtor's motion for summary judgment and denies the Chapter 13 Trustee's objection to confirmation and motion to dismiss on this point.

### C. Good Faith and Remaining Issues for Trial

Debtor argues that because his plan complies with the disposable income framework of § 1325(b)(3), his plan can be confirmed as filed, without consideration of good faith. This is not quite right either, however. Section 1325(a) states:

> Except as provided in subsection (b), the court shall confirm a plan if--
> . . .
> (3) the plan has been proposed in good faith and not by any means forbidden by law; [and]
> . . .
> (7) the action of the debtor in filing the petition was in good faith[.]

Although "good faith" is required for confirmation of a plan under § 1325(a), the phrase 'good faith" is not defined by the Code.

The Tenth Circuit considered the Code's treatment of disposable income and good faith in *Anderson v. Cranmer (In re Cranmer).*[33] In *Cranmer*, the Chapter 13 Trustee disputed the debtor's calculation of disposable

---

[33] 697 F.3d 1314 (10th Cir. 2012).

17

income, which excluded Social Security income as permitted by the Code's definition of current monthly income in § 101(10A)(B).[34] The Circuit concluded that the plain language of the Code demonstrated that Social Security income should be excluded from the projected disposable income calculation.[35] The Circuit then addressed the good faith inquiry under § 1325(a), and stated:

> When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith. A contrary holding would render the Code's express exclusion of SSI from the calculation of the debtor's disposable income, and thereby, its exclusion of SSI from the calculation of the debtor's projected disposable income, meaningless. It simply was not bad faith for [the debtor] to adhere to the provisions of the Bankruptcy Code and, in doing so, obtain a benefit provided by it.[36]

In support of that holding, the Circuit cited cases stating that a calculation expressly permitted by the Code could not, standing alone, warrant a finding of bad faith.

As a result of the Circuit's decision in *Cranmer*, the Court holds that Debtor's payment of the secured debt for the 2018 Dodge Ram, and application of the disposable income requirement under § 1325(b), does not alone constitute a lack of good faith. As a leading bankruptcy treatise notes:

---

[34] *Id.* at 1315-17.
[35] *Id.* at 1318.
[36] *Id.* at 1319 (internal citations omitted).

18

> Because the debtor is permitted the expenses set forth in section 707(b), courts have rejected the argument that a debtor claiming such expense allowances has not proposed a plan in good faith. Thus, a trustee or creditor should not be permitted to object that a debtor's secured debt payments are too high and that the debtor should relinquish property rather than continue to make those payments. There is no evidence that Congress intended debtors to default on secured debt payments in order to pay more to unsecured creditors. Indeed, the means test calculation of section 707(b)(2) evidences an intent to ensure the payment of secured creditors' regularly scheduled payments over payments to unsecured creditors.[37]

As one local court stated: "According to the decision in *Cranmer*, following the provisions of the Bankruptcy Code does not constitute bad faith merely because the outcome is distasteful."[38]

That does not mean that the Court does not have to consider a good faith challenge when one is made. Rather, the Circuit in *Cranmer* indicated that the Court should consider "factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[39] Good faith is a factual question,[40] and the totality of the circumstances is still the touchstone.[41]

---

[37] 8 *Collier on Bankruptcy* ¶ 1325.11.
[38] *In re Roberts*, 493 B.R. 584, 594 (Bankr. D. Kan. 2013).
[39] *In re Cranmer*, 697 F.3d at 1319 n.5.
[40] *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir.1993).
[41] *In re Cranmer*, 697 F.3d at 1318 ("The good faith determination is made on a case-by-case basis considering the totality of the circumstances.").

19

The Court must hear evidence to assess Debtor's good faith, if the Chapter 13 Trustee still wishes to pursue that challenge. The Court therefore denies Debtor's motion for summary judgment on the good faith inquiry. Debtor must show, based on the totality of the circumstances and the factors enumerated by the Tenth Circuit in *Cranmer*, that his petition and plan were filed in good faith. As noted above, however, the mere compliance with the disposable income requirements of § 1325(b) is not, by itself, probative of a lack of good faith. The Court denies Debtor's motion for summary judgment concerning good faith, and will set the Chapter 13 trustee's objection to confirmation and motion to dismiss concerning good faith for trial.

### III. Conclusion

The Court grants in part and denies in part Debtor's motion for summary judgment, and denies in part the Chapter 13 Trustee's objection to confirmation and motion to dismiss. The remaining issue is whether Debtor's petition and plan have been filed in good faith under §§ 1325(a)(3) and (a)(7). Debtor's compliance with the disposable income framework of § 1325(b) is not itself, standing alone, probative of a lack of good faith. The Court will set this matter for a status conference, at which time a trial date will be selected.

**It is so Ordered.**

###